May it please the court, my name is Jared Stief, I'm the attorney for the Defendant Appellant, Washington Metropolitan Area Transit Authority. I want to give the court just one brief factual update that may be relevant to the overall picture here. Officer Spencer did in fact retire on September 1st, 2014, this past September. However, anticipating a possible question, that would not render the case moot, because under the terms of the stay that the parties agreed to and which Judge Brinkum granted, there is issues of back pay still related to him and obviously the whole picture as to Officer Benton. So consequently, this appeal is not moot as to Officer Spencer. There's four primary arguments that we have in this particular case. The first one is the District Court's error in overlooking, essentially, the fact that both Officers Benton and Spencers were in fact returned to pay status after the initial arbitration decisions. Rather, it was a second intervening action, the denial of certification or recertification by the Maryland Police Training Commission, that led to their termination for the second independent reason, because they could not conduct police activities in the state of Maryland. Obviously, I'm sure this Court is well aware of the fact that WMATA is a tri-state interstate compact. I believe we're the only such tri-state one. Yeah, I think we know what WMATA is. Okay. Did WMATA have an obligation to comply with the arbitration awards in good faith? Did they have the obligation to comply with the awards? In good faith. Yes, Your Honor. Okay. And did the District Court conclude that you didn't do that? Your Honor, the District Court was troubled by the two letters. I know the District Court was troubled, but I asked you a direct question. Your Honor, I don't read the District Court's opinion as a factual finding that it was not done in good faith. And in addition to that, I'd submit that that was not the role of the District Court to make such a determination in the first instance. At most, assuming the District Court had any jurisdiction, it was simply to make a determination as to whether or not the second termination as a result of the denial of recertification was an arbitrable issue or not. The District Court went far beyond that and actually reached the merits of that decision. What if the second termination, what if the lag between the two had been a week? Your Honor, I don't believe that would have made any difference. However long it took the Maryland Police Training Commission to have the hearing, and it was a full-blown evidentiary-type hearing, whether it took a week or several months, as the case was here. The simple fact of the matter was WMATA had complied with the initial ones because while the proceedings were going on before the Maryland Police Training Commission, they were on pay status. They were getting paid, which was compliance with the arbitration decision. The arbitration board said they were retaining jurisdiction to see implementation. That's correct. And the implementation obviously involved recertification. It had to because they turned in their certification. After the recertification did not occur, why didn't the arbitration board then adjust its remedy? Your Honor, there is somewhat of an open issue as to the exact meaning behind that November 19, 2012, supplemental arbitration decision in the Benton matter. The question, how broadly do you read it? They said they didn't have jurisdiction, didn't they? They said they do not have jurisdiction. That sounds to me like it's inconsistent with what they had indicated earlier. And if that was error, should we adjust that error? Your Honor, I don't believe it was error. I think the board is saying that this is outside the parameters of what was initially put before us. A broader reading of it could be, and we don't have jurisdiction to consider this because... Well, the officers then filed grievances thereafter again, right? Both officers filed grievances. Officer Spencers went through the three administrative stages but didn't take it. The union did not demand arbitration at that point. Officer Benton, as best we can determine, went through the first stage which was denied and never went to stages two, three, and four and requested arbitration. So basically the union, I guess it's fair to say, gave up on the process. It's our position... I guess my question is mostly procedural because we have an arbitration provision. We have these disputes that are committed to arbitration. We have an arbitration for reinstatement. The reinstatement is rendered impossible by the Maryland decision. And there is some further pursuit before the board. But nothing happens. In one sense, at the first level, the board says we don't have jurisdiction. Nobody appealed that. In the second sense, there were new grievances filed and they weren't pursued. So what procedurally, where does that put us? I mean, Judge Brinkham has said we're reviewing the initial reinstatement order. But that sort of ignores what happened after the certification. I couldn't agree more with what you just said with the last part of the sentence there. Well, I'm just making procedural observations, not conclusions. The remedy now for the judiciary is a complex question. I agree it's a complex question, Your Honor. It is our position, first of all, that the union waived any further processing of this by not, in the Spencer case, even asking for arbitration on this issue. And in the Benton case, even though they did raise the issue with the prior board, once the board said we don't have jurisdiction, it's our position it should have been up to the union to treat it as a new demand for arbitration. Well, they did. They started the process and one officer went through the first stage and the other went through the third stage. But neither one of them demanded arbitration again. They could have, right? Well, Your Honor, I believe the timing of the issue is that the final step in the Benton matter was the November 19, 2012 order. They had gone to step one but jumped past two and three and I believe four and did try to raise it there. That was the end. It wasn't like after the November 19, 2012 order that then they did the steps. They did it relatively quickly after the respective denials. So they filed a new grievance. It went up and you say the November order was a determination in that grievance procedure. I didn't understand that. And it is a little bit ambiguous because of the fact that the union in the Benton case just went to step two. I'm sorry, went to step one, bypassed steps two and three, and then tried to just go back to the old arbitration panel. So the union skipped some of the steps. Why isn't the whole judicial proceeding focused on those procedures, whether there was error on any part, whether the officers waived process, or whether the arbitrators erred in not taking jurisdiction? In other words, it seems to me we don't have enough, I think including the district court and the circuit court, we don't have enough to rule on at this point. There's either a waiver or there's an error by the board and it should go back to the board for determination of the appropriate remedy following the Maryland ruling. And, Your Honor, with the understanding that WMATA would not be waiving any timeliness issues that it may have with respect to that, we would not be adverse to such an approach to it because the district court went off on summary judgment but basically ignored, bypassed, or maybe we didn't even present them sufficient factual basis for Judge Brinkeman to make that decision. But it is our point that she went far beyond what she should have been doing in the very limited review and that her decision was really premised on the enforcement of arbitration decisions, the original arbitration decisions as to both officers Spencer and Benton, that didn't have before it, couldn't have had before it, because the triggering event, the denial of recertification, had not occurred. So, what would you have us do? You're the appellant. What we would have you do, Your Honor, first of all, I'm not waiving my primary argument that these are, that the judgment should have been entered in WMATA's favor because of this. Because of the arguments that we raised here, there's no, we have immunity from certain types of decisions. Forget that stuff right now. I want to know on the merits why you should win outright. In other words, it seems to me we have a dispute about whether officers were properly dismissed. Correct. The union said they committed the conduct, but the remedy was too severe. The officers were, went through the recertification process, and we can discuss that separately. They're not recertified, so now the remedy of reinstating them as officers under the charter, the charter comprehends them to be in all jurisdictions and certified, is not possible. So the union then gets it and says, I mean the board then gets it and says, we don't have jurisdiction. And shouldn't somebody be claiming they did have jurisdiction and should be handling this matter? And our argument to answer your question is, we feel that this matter of requiring our officers to have the necessary certification in Maryland is an issue of core management rights. Well, it's more than that. It's actually in the charter. It says each one has jurisdiction in each state and has to satisfy the qualifications in each state and so forth. But absent that, if the court doesn't agree with us on that. 76. Correct. If we get beyond that, if the court doesn't agree with me on this, absolutely yes, the case should be sent back. Well, what's your first position? I haven't understood it yet. Okay, our first position is because this is a matter of core management rights. The court need not even reach that. Summary judgment should have been granted for WMATA. Absent the court's finding in our favor on that, yes, a remand would be appropriate. Do you want us to uphold the WMATA's decision terminating the employment of these two officers following the decertification? Yes. Without going through arbitration? Your Honor, because we see it, as I said before, as a matter of core management rights. In other words, it's not... I thought you thought it was a different issue that they hadn't asked for arbitration on. Well, that as well, Your Honor. That as well. Okay, but that seems to me to be an easier argument for you to make than... Mm-hmm. It's twofold. It's our decision to require our officers to be certified in all three areas... Nobody's challenging that. Okay. And the charter requires them to satisfy the requirements in all three jurisdictions. And so the condition that they be certified is not challenged. The question is, what's the remedy? After they're reinstated, they don't get recertified, they get fired, they object to that. Now, what should have happened, I think, in the ordinary course, is both of them should have gone back through the arbitration process with the new facts and have a remedy determined by the arbitrator. But they didn't do that. They did not do that. They stopped short in cases of both. They began the process, but the union did not raise it. Your argument has to be that the prior arbitration decision controls and that you somehow violated it by the actions you took in lobbying the Maryland authority. I mean, that's... That's their argument. That's their argument, yes. So to try to answer both of your questions, it is the procedural issues that we have from a procedural, but substantively, it's our position that an arbitrator can't overturn because it's a matter of management rights, a decision to require the certification. But if the court agrees... If the court decides that it's not right for a decision at that point, then certainly a remand to flesh out the arbitration issues would be the alternative solution. Let me ask you this. With respect to the Maryland process, did the union present its position before the agency, Maryland agency? Absolutely, Your Honor, and the transcript is in the record. Both WMATA and the union made their arguments before the Maryland Commission. That's correct, and both officers, Spencer and Benton, had the opportunity to speak at it. I believe they said very little at the respective, and they were represented by counsel at both of those recertification hearings. There's some suggestion, I think I read in the record, that WMATA has never taken the same active role in proceedings like the Maryland certification proceeding, particularly in writing the letter. Is that correct? Your Honor, there was information... Just tell me what the evidence in the record is. Wasn't there questions about that? There were certain questions about that. And the questions were, you've never remembered an incident like that? Your side said that. There was no incident specifically like this involving the recertification. The union put some information into the joint appendix, which was presented at the request of the judge in the reconsideration process below, but there are really distinguishable factors involving this exact issue. I see my time is running down. Your time is up. My time is up. I'll rely on my brief for the other alternative arguments. Well, you'll have some time to reply after we hear from Mr. Esterad. Good morning. May it please the Court. We take exception to most of what's been said earlier today. Mr. Esterad, I would really be in your debt if you could tell me what you want us to do. We want you to affirm the two arbitration awards and order reinstatement. You don't want us to send this back to have you get a new... to grieve this... Obviously, that's more acceptable to us than a reversal. Have you asked for that anywhere in your papers? No. Did you ask the district court for that? No. Well, let me ask you. How can the old arbitration award govern in view of the subsequent circumstances? I mean, we have a new circumstance, which is decertification, which means the officers can't be reinstated as officers under the way... That's not... Well, let me start by discussing the second Benton award. As you know, these arbitration panels are tripartite. There's a union representative, a manager representative, and a neutral. The union brought the issue of the Benton award back to the arbitration panel after the Maryland Police Commission, and the management person convinced the arbitrator that they didn't have jurisdiction. So the union tried to get this to arbitration, and it was management... Couldn't that be appealed? We are appealing. That's what this case is about. But let me explain... You're claiming that the arbitrator erred in not taking jurisdiction? That's what it seems to me should have been done. Maybe he should have, and that was what we tried to do. Did you argue that before Judge Brinkman? No. What? No. But let me explain. We disagree with the concept that there were separate discharges. We understand that. But what we're trying to do is to see if you alternatively made the argument that they were separate and that their second discharge should be arbitrated. And it seems like you did it once, but you never argued that in front of Judge Brinkman. I want to get back to a question you raised at the very beginning. And that is whether WMATA has an obligation to comply in good faith. The arbitrators initially reinstated... The arbitrators reinstated both police officers. WMATA concedes in its brief on page 7 and 14 of the initial brief and on page 1 of the reply brief that it reinstated them not permanently but conditionally. And then it set about to make sure that that condition never took place. And that's why we argue they didn't act in good faith with regard to what they did before the Police Training Commission. But isn't that an issue you take back to the original panel, or I guess what you tried to do? Well, if the issue is good faith compliance with the initial award, that's an issue that goes to the court in terms of whether they complied or not. That doesn't go back to the original arbitration panel? No. It's a brand new fact, the decertification, which was not existent. They turned in their certifications, and the arbitrators initially recognized that there could be issues in implementation and retained jurisdiction explicitly in their awards. And so now you go to the Maryland Police Commission and the Police Commission decertifies, which means they can't be reinstated to their positions. And now the question is, what's the remedy? And it seems to me the courts don't have a place in that. The remedy is what the arbitrator determines. And if the arbitrator erred, the arbitrator should be reviewed. There's no contention that either arbitrator erred. On the facts that were presented to it, the arbitrators got it right. There's no suggestion. After the decertification, the arbitrators said we have no more jurisdiction. You think that was correct? No, but that's what happened. We're not challenging that award. We're challenging the basic... Well, then don't you waive anything further? No. I don't understand. Our contention is that based on what WMATA did to the two officers here, in comparison to what it did to everybody else that had had a dishonesty issue, suggests that WMATA had no good faith in going to the Police Commission. Your whole contention is that WMATA did not, in good faith, abide by the original arbitration award. Correct. That's your case? That is our case, and it's based on the evidence that the district court required us to put in. What's the evidence that you think getting certification is bad faith? No, challenging the certification in the way that they did. If you compare... What if their position is these officers should not be serving because of the honesty issue, and that's the position they took, that's all they took, and the union got to take a position and the officers could take a position? What they did in this case is send two letters. If you compare what they did in these two cases to what they did in the Napadon case, where... Look, there may be extenuating circumstances in that, but they're entitled to make presentations to the Police Commission. This is not a payoff. They weren't lying. The WMATA basically was saying officers serving here have to satisfy an honesty level. Now, if they didn't enforce that earlier, that doesn't make them in bad faith here, does it? Yes, that's what the district court found, and we believe they were correct. The district court, when it saw those two letters on the day of the argument for summary judgment, said you're making an end run around the arbitration process. So you assume that those letters, that the Maryland Commission is not sufficiently independent, that it considered the union position, the officers' position, and WMATA's position, and didn't make its own determination. I mean, this was a full due process agency proceeding in Maryland, and they came out and said these officers cannot be certified in Maryland. And we have two positions. First, there are many people in WMATA, and we've listed some of them in pages 30 and 31 of our brief, who have been found guilty of dishonesty and are still working as police officers. And Napadon Wood was found guilty of dishonesty, was recertified, because there was no equivalent to the two letters sent with regard to him. They just notified the police commission that he was reinstated by arbitration, and that was the end. Well, you assume that two letters is the decision made by Maryland when Maryland heard from the union, Maryland heard from the officers, Maryland considered the matter, conducted a public hearing, and made its decision. Now, are we to conclude that that decision is in bad faith? We're not asking you to find that the Maryland decision was in bad faith. Do you have to if you make your argument? No, we don't. We have to argue that there was no good faith compliance with the basic arbitration award. Well, let me give you a hypothetical. What if WMATA didn't make any presentations to Maryland Police Commission, and the police commission decertified? We would have a harder case. Would you have a case at all? Would you have any case at all? Well, yes, because our other arguments are that the decertification or the refusal to issue certification in Maryland doesn't prohibit employment by WMATA, that these officers could be assigned to work in places where they would never have to go into Maryland. Further, we've argued... I mean, all you have to do is read the charter. It's just impossible. I mean, the charter talks specifically about police officers and their jurisdiction. They're on trains. You're going to require WMATA to now have police officers get on a train when they get to the border of Maryland, get off, have another officer get on. We're talking about collective bargaining issues that got to be solved at that level. And I don't see... And it says all the police officers have to be subject to the same limitations, regulatory limitations, as anybody who's a member of the police force in those three jurisdictions. That's part of the charter. They have to be certified in the jurisdictions where they serve. I didn't say that. It says police officers who are employed by WMATA. And that's because WMATA is a three-jurisdiction operation, and its trains don't stop at borders. But its buses do. And there are people assigned to work on the buses. Don't you think that's pretty heavy-handed for the judiciary now to tell WMATA that they have to change officers at borders when the charter anticipates just the opposite? No, because they could be assigned to work on buses that don't cross borders, at least not cross into the Maryland border. I think they could be assigned administrative tasks. They could do that also. But all of these are union issues. The company decided after decertification to terminate their employment. And that clearly seems to be something that would be within their management discretion. If it was erroneous, it should have been grieved, right? They don't have the kind of management discretion that you're talking about because... Well, couldn't you argue that to an arbitrator in a grievance procedure? Yes. Where grievance is filed after the termination? Yes, and then... And why weren't they pursued? Because we had the second Benton Award where the WMATA convinced the arbitrator that he didn't have jurisdiction, the panel didn't have jurisdiction. So why didn't you just appeal that? I don't know. But I don't think that's the dispositive answer. We think that the possibility of them working in Virginia or the District of Columbia plus the fresh pursuit statute would enable WMATA to keep those people employed as the arbitration awards require. Let me ask you this. Was placing the officers on administrative leave pending recertification? Was that, in your view, a violation of the arbitration decision? The arbitrator awarded them reinstatement. They got reinstated, they got paid. They were paid through the Maryland Police Training Commission. We would obviously have preferred that they be given police duties, but they weren't. I don't believe that was the violation. The violation was firing them after the Maryland Police Training Commission. I just don't understand. If that was the violation and you say the reinstatement to administrative positions was not a violation pending certification, the violation was terminating them after, I don't understand why that wasn't pursued through arbitration. Because that was in noncompliance with the first award. First order didn't anticipate the issue of certification. That wasn't a fact on the table. That's correct. But the first award said reinstate them and it does not violate public policy to reinstate someone after the disqualification by Maryland. It's not a question of violating public policy. It's a question of whether that's the, no arbitrator said to reinstate them just in D.C. or Virginia. That raises all kinds of new issues. And it seems to me that that should be something on which WMATA and the union would have a discussion in context of its charter, work conditions, how it's going to be carried out and accomplished. Have you ever heard of an officer being certified in only one jurisdiction and working for WMATA? As it turns out, the answer to that is yes, because Maryland is the only state that requires certification. So everyone... Well, I thought Virginia did. There's no evidence that anyone actually went through the Virginia policy. And the District of Columbia doesn't require certification. So it's... Are you aware of any police officer working for WMATA who is, as a police officer, who's not certified in Maryland? No. On the other hand, the court found, and there's really no dispute, that there's no general order, no published rule or regulation that requires certification as a condition of employment. And... Well, except, I'm just looking at 76 here and it says that you shall have the same powers including powers of arrest and shall be subject to the same limitations including the regulatory limitations in performance of the duties. And we read that to mean that the officers serving in Maryland have to be qualified to serve in Maryland, the officers serving in the District have to be qualified to serve in the District, and the officers serving in Virginia have to be qualified to serve in Virginia. It doesn't require that each officer be certified for the three jurisdictions. It says, with respect to members of the Metropolitan Transit Police, the authority shall provide for their training, etc. And this training and the qualifications of uniformed officers and plainclothes personnel should be at least equal to the requirements of each signatory of the political subdivisions they're in and the transit zone for their personal performance... for their personal performing comparable duties. And we believe that means they have to be certified where they work, not certified to work in all three. If it were that simple, the... I don't think it's that simple. I think it should be handled by an arbitrator where the parties make their presentations and work conditions and management styles can be discussed and adjusted. But to have the judiciary come in and do that when it's never been presented below, there was no evidence presented as what the impact on the working conditions would be and how you would accomplish it, how you would stop a train with a... I mean, a train goes from Virginia all the way up to Maryland. Almost all the lines go across. And so the guy's on in Virginia, and he has to get off somewhere and meet an officer to get on somewhere. I think that happens frequently, but as you indicated, there's no evidence in the record either way. And as I said before, we would obviously prefer a remand to arbitration. Well, I think that would be a pretty decent remedy, but it's just not been briefed that way by the parties too well. Or requested. Well, if you need a specific request, we would make that request to have it remanded rather than reversed and dismissed. It seems to me both of you seem to agree that that would be a reasonable alternative. It's not OMADA's first position, and it's not your first position. Sometimes second best is good enough. If you have no further questions, I've said what I think I need to say. Thank you. Thank you. Mr. Steeve. Your Honor, I just have one point to make. Mr. Axelrod made some comments about the proceedings before the Maryland Police Training Commission. The union had the right to seek judicial review of that. Under Maryland law, this is point four of our brief, they chose not to go that route. Unless there are any other questions, I don't have anything else to add. Okay. Thank you very much. Thank you, Your Honor. I'll ask the clerk to adjourn court, and then we'll come down and greet counsel.
judges: William B. Traxler Jr., Paul V. Niemeyer, Diana Gribbon Motz